GOODS, ART PESELAK. In this case, the district court specifically limited its subject matter jurisdiction at the beginning of the case to a portion of Mr. Frohlow's breach of contract count, namely to determine at the plaintiff's request whether certain tennis racket models that Wilson sold and for which it did not pay Mr. Frohlow any royalties at all were, in fact, licensed articles. In the beginning of the case, the court also ordered that any question of damages in the case would be subject to arbitration under the dispute resolution mechanism clause in the party's license agreement. It also, under Rule 12b-6 motion, dismissed Mr. Frohlow's patent infringement count entirely. There were then several errors by the district court where it proceeded beyond the limited scope of its self-defined subject matter jurisdiction. I think we have the procedural progress of this case well in hand. I think you ought to jump to what you think are the reversible errors. The first reversible error occurred when the district court granted Wilson's motion for judgment as a matter of law at the close of Mr. Frohlow's case at trial. It dismissed his breach of contract claims with respect to the five tennis racket models that were at issue because he didn't prove patent infringement, but there was sufficient evidence in the record to support a breach of contract claim. If the Rule 50 motion had been evaluated as a breach of contract claim, there was sufficient evidence for the jury to find that Wilson breached the agreement. There were, from the very beginning of this case, Wilson set forth only very limited reasons. Does that mean that you agree that if this had been a patent infringement suit and not a breach of contract action that he would not have proffered adequate proof to establish the elements of the claim like a head and a grip and the strings being horizontal or whatever? I don't believe so because... You don't? Go ahead. Prior to the Rule 50 motion, Wilson never produced anything in discovery on the first summary judgment motion or in the final pretrial order where it was contesting the fact that these were not tennis rackets. What does one have to prove? I mean, the whole object here in front of the district court was to decide if there are any licensed articles. Right? Yes. Now, a licensed article would be a tennis racket that does what? Does it meet the limitations of your claim? What does it do? It is a tennis racket that would meet the limitations of the claim. Okay, let's stop right there. So, in order to be licensed, you know, for purposes of this trial, you have to decide whether a particular racket met the limitations of a claim. Right? Correct. Okay. And as I understand, what Wilson did was to, there were some examinations of a certain number of the rackets. And Wilson came back and said, as to at least some of these rackets, they don't meet the sort of I.A. limitation. There were five racket models at issue for a trial with the I.A. limitation only, and one was centered... I'm sort of trying to get at how the case unfolded. Oh, sure. There were summary judgments before the trial. Yes. And as my understanding, what happened was that Wilson came in and said, well, the burden is on Frohlo to prove that there is a licensed article here. And that's in terms of the burden, right? Frohlo's a plaintiff. Yeah, a plaintiff. Plaintiff has the burden to prove it up. And they say, well, they can't prove that it's a licensed article if there's some element or limitation in the claim that isn't met by the racket. So they serve up essentially one, maybe two limitations, I.A. and something else, is that rackets don't meet these limitations. Right? Yes. And on the first summary judgment motion, the district court judge said, well, there are 42 rackets that are here in dispute, and 37 of them don't meet the I.A. limitation. And five of them, Frohlo, the plaintiff, came in and said, well, we dispute the evidence that Wilson put up to say that the I.A. limitation is not present, and the judge agreed with you. He said, as to five rackets, there's a tribal issue of fact. Correct. Because Wilson's argument, which is one of the limitations isn't there, failed as to the five. That's what got us to trial, correct? Correct. But in the process of getting there, the court was looking, and Wilson at least was looking, to say, Frohlo has to come in here and show every limitation in the claims are met in order to produce a licensed article. And Wilson chose for summary judgment just to pick one or two limitations to fight on summary judgment. So where does that leave us when we get to trial? Wouldn't you still at trial have to come in and say, well, there was a tribal issue of fact on the I.A. limitation for these five rackets? But here's why. I'm going to show you that all the other limitations are met. I think for a breach of contract claim, you don't have to do that. The only reasons that Wilson proffered ever to Frohlo. Stop and tell me in the breach of contract case, what would you prove as to the existence or not of a licensed article? I think Wilson had waived any claim to anything other than those limited reasons, the I.A. Well, but the district court judge asked you this exact question. Here is his trial transcript on this exact point. I approached both counsel, particularly you, Mr. Peslack, to say, was there anything in the record that could have shown such an agreement or waiver? And you candidly indicated that was not the case. And it was really by implication you were attempting to do that. And that's simply not sufficient. I don't think it was by implication. I think Wilson would have to produce evidence in the beginning of the case under Rule 26 that the other elements were not met. Why does Wilson have that burden of proof? It's the patentee, or in this case the licensor, that has the burden of proving that this is a licensed article. Why does Wilson have to come forward? Why didn't you ask? Why didn't you ask him for admission about whether the things have hence? Why didn't you ask an interrogatory along these lines? Anything at all that could have been arguably an admission. Get back to your theory, which I now understand, which is there's a difference between a contract case and an infringement case. Yes. So assume it was a contract case, and the contract case was somebody said, I'm going to sell you a pregnant brown cow. And the person comes back and says, I don't have to buy that because the cow isn't brown. Does that mean they waive the right later, and the district court judge says, well, no, it was brown, but that means they waived the right to challenge because the cow wasn't pregnant? I mean, you're telling me that on summary judgment the rules are different in patent cases than they are in contract cases? No. The summary judgment decision was clearly the district court engaged in a patent infringement analysis. Was the answer to Judge Moore's question that they marked the rackets with the Frollo patent number? Is that where the supposed waiver arises? There were rackets marked with Mr. Frollo's patent number that were produced during discovery. But these five are not the marked ones. You've never alleged that these, as far as I can tell, these five were marked. You alleged the 14 were marked and the summary judgment and other things. Am I wrong about that? You're correct. There's nothing in the record as to which 14 were marked. Well, there's nothing in the record to show that these five were marked. That's correct. These five, which is my picture on the Internet of the five rackets at issue, because there's nothing in the record that showed me the five rackets. So I just went on the Internet and looked for them by model number and found them. Correct. I mean, what happened during discovery was there were a lot of racket models at issue, and Wilson could only produce 16 sample rackets, 14 of which were marked with Frollo's patent number. And the issue that was raised on summary judgment, which is different than the final judgment issue, was marking estoppel, in that the 14 rackets were marked with Frollo's patent number, and this is an equitable estoppel argument that if you were taking rackets and putting someone's patent number on them as the licensee, you should be estopped from coming into court and claiming they're not licensed articles. And the Second Circuit had a decision where they discussed this in some detail and basically said that someone in Wilson's position, it should be relatively easy for them to explain away whether the marking was inadvertent or limited. And other than legal argument, there was no evidence presented by Wilson on summary judgment, the first summary judgment decision, that the marking, whether or not the marking was inadvertent. What you're talking about now, the summary judgment on the 14 rackets, that is distinct and different from the five that went to trial, correct? That's correct. I just want to keep this straight. The five that went to trial there's no evidence of marking on, but on the 14, those you assert were marked, and their response was, well, whether they're marked or not, they all have an IA that is equal to or less than 80, and they provided tons of test data, which is in the appendix on that point, correct? I wouldn't characterize it as tons of test data. It was limited to several rackets. All 14 of them, right? Well, all the rackets, they only produced, they produced what were pilot run, they did tests on pilot runs prior to the manufacture of the rackets. That was the only evidence. Did Frohlo put forth any evidence to suggest that their test results were somehow inaccurate? On the first summary judgment motion, he did, and this was rejected by the district court, in that he did a mathematical analysis called standard deviation analysis. Where he took the high and the low? Well, I think they took the high and the low, but what he did was find that when you move from a pilot run environment to actual production, you're going to get a deviation from the numbers you see in the limited pilot run testing. You mean the number could go higher than the high? They have a high number of max and a low number of min, and you're saying that the max is not actually the max? Did Mr. Frohlo introduce some evidence that the number could go higher? He calculated what's called a standard deviation analysis. There were only 10 rackets tested. Well, there's a max and a min, right? The standard deviation is off a mean. I might not be remembering my probability theory exactly right, but my understanding is you start with a mean, and then the standard deviation is, I should move away from the mean, but I don't understand the standard deviation as to be able to go above a max or below a min in a statistics analysis. He calculated it, and it came to be that there would have been some rackets that could have been produced with an IA greater than 81. Where is this evidence in the record? Because I could not find anything like what you're describing now in the appendix, and not even in your brief did you ever mention that such evidence exists. So where is it? We didn't argue that point on appeal, but it was in the… Well, if it's not argued on appeal, how am I supposed to reverse the summary judgment on that basis? It was in the district court's opinion on summary judgment. So we have the five rackets as to which there was a trial and there was a directed verdict at the close of your case. And then we've got the summary judgment motion which produced the five, right? The first summary judgment went from 42 rackets. The district court said as to 37, you failed to make the patent case show, and that produced the five. Now, with regard to that 37 that was remaining, you have an argument as to that, right? The argument is the patent marking estoppel or the standard deviation analysis. I'd also like to… It's not in our brief. It's on the summary judgment. But it's not in your brief anyway. It's not in the brief. Okay, so that's the 37. Now, the money in the case may be on the 299. That's a lot of rackets. Yes. There were 299 rackets that came into the case as a result of the foreign audit, right? Yes. Now, the district court on the second summary judgment, as I understand it, and he said I have alternative grounds for granting Wilson's motion for summary judgment. One is I shouldn't be looking at the 299 rackets at all because they shouldn't be in the case. Because Wilson said they shouldn't be here. And the trial judge agreed with that and said I'm going to, in essence, grant the summary judgment to say we shouldn't even be looking at the 299 rackets. They're not in the case. Then he said alternatively, alternatively, if I were to treat them as being in the case, then I would say that the plaintiff has failed to show the presence of the limitations of the claims and the rackets. So what is your argument to upset that second ground? Assume for purposes of argument I believe that the trial judge was right, that the 299 should have been out of there. That argument is that the second summary judgment motion was entirely beyond the jurisdiction of the district court in that the 299 racket models had been treated by Wilson as licensed articles. They paid royalties on all of them. The only question... Were they also marked? We don't know whether, there's no evidence as to whether they were marked. But Wilson paid royalties on them. The only question is that our auditor found that the royalties were short and it was a question of damages which was excluded from the district court's jurisdiction by its initial order. These rackets, there should have never been an adjudication. Wilson never came and said these aren't licensed articles. They just moved for summary judgment. If I read Wilson's second summary judgment motion, they allege that 82 rackets out of the 299 failed to meet either the IA limitation or another limitation in the claim. That was the first notice that they gave Frollo that they didn't meet the limitations. Right, but that was their allegation. Right, that's correct. The district court judge did not address that in his second summary judgment decision, correct? That's correct. So what is the approximate difference between that which they ultimately agreed should have been paid and has that been paid, the 900-some? In the beginning of the case, Wilson tendered payments to Frollo of approximately $800,000. Depending on how these foreign rackets and the other rackets fall out, there's still another $200,000 to $400,000 at issue. So that was tenured, that's not in dispute? No, there is money in dispute right now over the foreign rackets and the domestic rackets. You're saying that tenure is no longer on the table? No, Wilson, what happened in the case was there was an audit and there was a disagreement between the parties. Wilson agreed some of the rackets were licensed articles and they should have paid on them, and they also agreed that they had shorted Mr. Frollo on royalties on some of them. They paid $699,000 on the domestic audit in, I believe it's 2007, and then they paid another $80,000 on the foreign audit in, I believe, 2008. Well, that was my question. Approximately how much more is at stake? There's approximately $200,000 to $300,000 at stake at this point. Okay. Let's hear from the other side. If I just want to clear about one thing, the $299,000, as I read the district court's second summary judgment, he said that they don't constitute licensed product. He found them as not licensed articles because Frollo hadn't tendered. I understand that, but so if we sustain that, then whatever money you may have already received on account of the foreign rackets, I guess you get to keep, but you don't get to take those $299,000 rackets back to the arbitrator. That's correct. And you contend that that's increased. So there's potentially quite a lot of money left at stake if those $299,000 rackets are held to be licensed product. That's correct. Okay. Let's hear from Mr. Key. Good afternoon. Jeffrey Key from Key & Associates representing Wilson Sporting Goods. This case is, in essence, a contract dispute, but because the contract here specifically says that Wilson only owes license fees on licensed articles and the only thing that is a licensed article under Section 1.2 of the agreement is a tennis racket which is covered by one or more The court is required to undertake a patent analysis to determine if a racket meets the claims. Is each element of the claim in each asserted racket? Wilson originally moved to dismiss or stay the entire case and go to arbitration. Judge Chesler said, when I look at the contract, I think that the contract is silent on who decides what's a licensed article. So he retained that. That aspect isn't appealed, is it? It is not appealed. Let's get to the substance of the issues. Well, one issue has to do with... Why aren't you bound by the pretrial order? At page 26 of the pretrial order, there is Section 5, Defendant's Contested Facts. This is the order where you put in evidence everything that you all each agree is in dispute. Mr. Frohlo wouldn't have put in any evidence about heads or anything else because these rackets clearly have heads. But this is where you're supposed to put in any evidence on these five rackets which you dispute. Defendant's Contested Facts. And then I go through and look. You have a claim chart. The 372 patent has five relevant independent claims that are summarized below on page 28 of your pretrial order. You all put together those five claims and the only limitations you had any disputes on, for some of them were CP, but for all of them were the IA. At the moment of inertia and CP, I don't even remember what that stands for. But the point is you didn't put forward in your claim chart anything else other than those limitations. It's all you discussed throughout. In fact, you have a sentence on page 31, number 19, on your pretrial order. Wilson's test data applied to each of the five remaining disputed rackets proves that each disputed racket falls outside the literal limitations. The physical properties of the rackets at issue have been tested by Wilson. Here's the data. And again, it's only the IA and the CP. You go through all of them. That's the only thing you include. You talk about the Seidel Declaration, et cetera. But everything in this thing is only the IA and the CP. That's all you put forward in your contested facts for trial. So why did they have to introduce any evidence of a head or strings or anything else? Because it's their burden of proof to do so. No. You narrowed the issues for trial. That's the purpose of a pretrial order. And you had to put forth what you disputed. That's all you disputed. Yes, Your Honor. We did not have any of these rackets. The burden of finding these rackets... We didn't have these rackets. These are Wilson rackets. What do you mean you don't have them? Each one is a Wilson racket. We did not have these rackets. This is a license that had been in place since 1989. Some of these rackets had started sales long before the audit period. Wilson searched every record that it had, all of its archives, every warehouse that it had, trying to locate the disputed rackets... Christian, how long did it take for us to find these online? Five minutes, maybe? Picture of each one of them right here. Guess what? They all have hands and grips and handles and everything else. And none of that evidence made it to trial. I'm astounded at saying that it's necessary to prove that a tennis racket is a handle. Those were some of the issues. The other issues at trial included... It does not pass the SMILE test. That's extraordinary. And netting. And netting in a plane. And netting with vertical and horizontal. There are rackets in the market that have lots of variances, and there was no proof ever entered. So what Mr. Fuller was asking the court... But you didn't contest those issues. In the pretrial order, it is your obligation, as well as the plaintiff's, to put forth the issues that are to be tried. That's the purpose of a pretrial order. And you didn't put forth those issues. And we did not stipulate to any of those. We sought stipulations on a number of issues. Did you stipulate that a tennis racket has a handle? We did not stipulate to that. I should hope not. I mean, do we stipulate that the lights are on or off? But then what is suggested is that the court should take judicial notice that these are infringing items. No, the court should take judicial notice that a tennis racket has a handle. And it might even have strings. And what type of a grip does it have? And where is that grip located? That wasn't what the district judge... But those were all elements. No, no, no. Claim 20 does not require that. Claim 20 says having a grip portion suitable for a hand. Well, what would be the purpose of the grip on a tennis racket but to be suitable for the hand? Are you going to hold it by the strings and try and hit the ball? I was just flabbergasted at the audacity of the argument you made. If you had limited yourself just to the horizontal and vertical strings, since two of the five rackets at trial have some diagonal strings, the other three are clearly horizontal and vertical, if you had limited yourself to that, maybe I would have had more respect for your argument. But you overreached with the hand, the head, and the handle and the grip. It's nonsense. They were all elements of the patent. Each patent, to assert a claim against an article, it has always been the law that you must prove each element of the claim against the accused article. And they weren't here. The weight times the center of gravity elements were not there. What if we interpret your pretrial order as a concession? Because my understanding of pretrial orders is that both sides are required to put forth the issues that need to be tried. And since you did not contest any of those facts, why don't we just interpret your pretrial order as a concession? The district court examined the pretrial order closely after we moved for a directive verdict and decided that there was no such concession and no such stipulation. Why was that? Under what standards? That would be abuse of discretion. That the district court who undertook the final pretrial order abused its discretion in interpreting whether or not this issue was conceded or not. Let's just say for the sake of this debate that we think it was an abuse of the district court's discretion to refuse to recognize that a tennis racket has a handle. Where does that leave your argument? I'm sorry, could you repeat that? When you tell us that we review on the standard of abuse of discretion the district court's conclusion that there was a failure of proof because it wasn't proved that a tennis racket has a handle. Let's say that we conclude that that is an abuse of discretion because all you have to do is open your eyes to the world and you see that a tennis racket has a handle. What other arguments, other than this one, do you want to bring to our attention? Well, there are the other elements. That the string has... The strings and the head. That there's string netting. There were three or four. That it is only vertical and horizontal as opposed to diagonal. Yeah, two of the five patents appear not to have horizontal strings. Now, Judge Moore had pointed out to this stuff, it was easy to find, but I mean, two of the rackets appear to have non-horizontal strings. I don't know how that cuts. Even in this appeal, the plaintiff has not argued at all that the elements of the claims have been met by the proof in the trial court. There is no argument in his brief. He doesn't have to. The articles were marked with their patent number. Actually, none of the articles at trial were marked with a patent number and that's clear in the record. None of the articles that were at trial had ever been paid on. There was no royalty ever paid on them. They were never reported as royalty bearing. There's no basis for... That's why we have this lawsuit, because the royalty was not paid. Actually, the lawsuit springs from an audit right. Since 1989, at the beginning of the license, Mr. Frollo had the right to audit all of the payments being made. He waited until the license was about to expire to exercise his audit right. That brought in three years of payments. Under the audit rights, we look at what were the payments made, what were the rackets, and he is to determine what licensed articles should be in the royalty pool and potentially which ones should not. Mr. Frollo, through his auditor, Joseph Gemini, decided that the pool of audited licensed articles should be every tennis racket weighing less than 10.9 ounces, not an element of the claims, or any Wilson racket that had the name Hammer, which is a Wilson trademark associated with it. That's how we developed this pool of what should be a licensed article. At the beginning of this, Wilson conceded that in this pool there were 128 rackets that we had underpaid upon and we tendered payment of close to $800,000. That's not at issue any longer. The only thing that became of issue is... Would it be okay to talk about the 299 rackets? Is that okay? I'd like to talk about the 299 rackets. My concern is that I'm not certain that summary judgment should have been granted on those, not on the merits, not to resolve them on the merits. I think the district court would have been free to say too late in the process for me to allow them in. You'll have to bring a separate suit. But how is summary judgment on the merits with regard to these rackets justified? There was no proof whatsoever in response to Wilson's summary judgment motion. Weren't they marked? They were not marked. You paid royalties on all these. There is nothing in the record as to which of those records had been paid upon and which had not. Mr. Frohlo set forth a declaration in which he claimed that you paid royalties on this. This is a question of summary judgment. You put forth no evidence contradicting that declaration. Question of fact, inference goes in favor of Mr. Frohlo. You paid royalties on these rackets. Why isn't that adequate for him to survive summary judgment? Well, number one, that doesn't create an estoppel. He did not argue estoppel. You create the question of fact. It's an indirect way of saying that it meets the limitations of the claim. It doesn't meet the limitations of the claim if there's no proof whatsoever. Wilson put forth an affidavit showing that... He was pro se at the time? Yes, he was. Roughly 95 years old? Yes, Your Honor. He was pro se, and he put forth evidence that these 299 rackets you are paying royalties on, and now you've stopped, darn it, and he'd like you to keep paying. But that doesn't create proof of a racket meeting? That doesn't create proof that it's a licensed article. That's what you have to prove. It's a licensed article, and the fact that you've been paying royalties on 299 rackets isn't enough proof to survive summary judgment when you put forth nothing at all about these 299. Nothing at all to suggest, for example, they didn't meet the IA greater than 80 or any of that other stuff. We did, Your Honor. We had the declaration of William Severo indicating that these rackets did not meet those limitations. In fact... Wait, wait, you had 82 of the rackets. That's correct. And we had no evidence on the rest of them. There was no evidence. There is nothing in the record. But I mean, the syllogism holds. I mean, for purposes of Mr. Frollo being able to get to first base, he can't have a licensed article unless the licensing article meets all the limitations of the claim, right? Correct. That's the deal. So he pro se comes in and he says, well, on these 299 rackets, they're all licensed. Therefore, I think they all meet all the limitations of the claim. You come back and say, hmm, we don't know about all of them, so we can't even answer his complaint. So his argument is the only argument as to the 299 minus the 82. And you come in and say, well, 82 of them don't meet a limitation, so we have a tie ballgame. If we credit his allegation that they are licensed capital L, capital A articles, and therefore he thinks they meet the limitations of the claim, and it's on one side of the equation, you have nothing to counter the difference between 299 and 82, right? Respectfully. You said that, nothing. Respectfully, Your Honor. What that asserts is an estoppel argument, which would require proof that Wilson intentionally... No, estoppel would mean... That depends on how you look at it. Estoppel would mean you don't even get to come back and counter it. That's what estoppel would mean. Estoppel would mean you're out of the ballgame altogether. It's just a question of whether or not he's allowed to swing the bat. There are elements of estoppel, and he can't swing the bat unless he can show that the elements of estoppel are present, including a misrepresentation by the... He's not trying to throw you out of the ballgame. He's saying you can play ball with him, you just got to take it forward to trial. And, in fact, he was required to identify all of these, pursuant to court order... No, that's a different question. I started my whole line of questioning with if the district court had said procedurally it's too late in the ballgame because you didn't identify him soon enough, therefore I'm not going to let him in, then he would have been free to bring those in a separate action against Wilson. The problem is the district court ruled on the merits that they don't infringe, which seems a little premature to me. But there was no evidence, other than the fact that some of these may have been paid upon, which would create an estoppel, and an estoppel requires a misrepresentation and a detrimental reliance, and there was no proof whatsoever of those. You cannot survive a summary judgment... I don't think I had asked you any questions that ever used the word estoppel. I think it's a question of fact. That is a different issue than whether it creates an estoppel. The question of fact requires proof that... The proof was you've been paying on him. You've been paying him money on these rackets. Why isn't that proof? Because in an audit procedure, which is what this case is about, the parties take what's paid and what's not paid and they decide what has been underpaid, what has been overpaid, and you equalize it to find out what's right. But first you have to find what is the licensed article. The contract requires it to be covered by a valid claim of the patent. If it's not covered by a valid claim, it can't enter the analysis. But you didn't put forth evidence on 217 rackets. I guess that's what 299 minus 82 is. You didn't put forth any evidence that 217 rackets don't meet the limitations, and he put forth the fact that they're licensed articles that you've been paying on, therefore they must meet the limitations. That's enough to survive a summary judgment. He put forth no proof that they met any limitation. Can I ask a Procedure 1 question? Yes, sir. As I read the district court's decision on the second summary judgment, he said the 299 case law form patents should not be in front of me. They aren't part of the case. I don't have subject matter jurisdiction over the 299. Okay? So if a judge says, I don't have subject matter jurisdiction over the case, but I got a few comments about it, anyhow, aren't the comments irrelevant? I mean, what validity, what strength can an alternative ground have after the district court says I didn't have jurisdiction over the subject of this case? So why do I care what he thinks about the merits of the summary judgment? He said, I don't have any power over that. That's Procedure 1. So what's the answer to that question? In one respect, Your Honor, the proof of the meeting the claims would be irrelevant procedurally because he was required by order to identify everything several years earlier, three years earlier. No, but his decision on the 299, his first decision was, I agree with Wilson. I shouldn't even be talking about this. I should just not even be talking about this. It's a violation of the law of the case. It should not be. So I'm saying to myself, I frankly don't care what his view was on whether there was a dispute as to the merits of the summary judgment motion because he said I shouldn't even be talking about this. Indeed, procedurally, the 299 should not have been in front of the court. And you argued that, and I think you were correct. The 299, he should have simply dismissed the, ruled on the summary, the second summary judgment. So I'm dismissing this issue from the case. Thank you. Okay, thank you, Mr. King. Mr. Kessler. I have one thing that I would like to point out that was in the final pretrial order in the case with respect to the five racket models that were issued. This was, I believe, paragraph 24 of Wilson's facts on page A2953. And they discussed the, they're discussing the racket data for two of the models, T5832 and T7230. And they say that for these rackets, the test data straddles 80, some is below and some is above. And they say that for those that it's above, they are licensed articles. And for the data that's below, they're not licensed articles. And these were two of the rackets that were subject to the JMOL trial. Okay. Any more questions? No. Okay. Interesting case. Thank you. Okay, thank you. Ms. Kessler, this is Katie Kessler speaking as your physician. Do you have any more questions? No, I'm good. Thank you.